```
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:
                                                              Chapter 7
    SHENAZ KHAN a/k/a                                         Case No.: 14-75498-reg
    SHENAZ GEORGILIS,

                        Debtor.
-------------------------------------------------------------X
STEVEN GEORGILIS,

                        Plaintiff,                            Adv. Proc. No.: 15-8364-reg

        -against-

CORNING FEDERAL CREDIT UNION,
DAVIDSON FINK LLP, DAVID L. RASMUSSEN,
individually, THE LAW OFFICES OF AVRUM J.
ROSEN, PLLC, FRED S. KANTROW individually,
ALLAN B. MENDELSOHN, individually, THE
LAW OFFICE OF DENNIS O'SULLIVAN, P.C.,
DENNIS J. O'SULLIVAN, individually, VEHIFAX
CORP., RICHARD A. KRASLOW, P.C., RICHARD
A. KRASLOW, individually, and SHENAZ KHAN
a/k/a SHENAZ GEORGILIS, individually,

                        Defendants.
-------------------------------------------------------------X
```

**MEMORANDUM DECISION AND ORDER**
**(Re: ECF Nos. 19 and 24)**

Before the Court are motions by certain of the defendants in this adversary proceeding to impose monetary sanctions in the form of attorneys' fees and the costs of defending this action, against the *pro* se plaintiff Steven Georgilis ("Mr. Georgilis"), pursuant to 11 U.S.C. §105(a) and this Court's inherent authority to sanction abusive litigation practices. This adversary proceeding was commenced by Mr. Georgilis, the Debtor's ex-husband, against multiple defendants, including (a) the chapter 7 trustee, Allan B. Mendelsohn, in his individual capacity (the "Trustee"), (b) The Law Offices of Avrum J. Rosen PLLC (the "Trustee's counsel"),

(c) Fred S. Kantrow, Esq., a partner in the Trustee's counsel's law firm, individually ("Kantrow") (d) Corning Federal Credit Union ("Corning"), (e) Davidson Fink LLP ("Corning's counsel"), (f) David L. Rasmussen, a partner in Corning's counsel's law firm, individually ("Rasmussen"), (g) Vehifax Corp ("Vehifax"), and (h) Richard A. Kraslow, P.C. ("Vehifax's counsel") and (i) Richard A. Krawlow, individually ("Kraslow").  In the complaint, Mr. Georgilis asserted causes of action for breach of contract, breach of covenant of good faith and fair dealing, violation of the deceptive practices act, tortious interference with contract, fraud and conversion.

The Trustee, the Trustee's counsel and Kantrow [ECF No. 26], as well as Corning, Corning's counsel and Rasmussen [ECF No. 22] (together, the "Movants"), moved to dismiss the complaint with prejudice ("Motions to Dismiss").  The Motions to Dismiss were served upon Mr. Georgilis on January 22, 2016 and January 19, 2016, respectively. [ECF Nos. 27 and 25].

In separate motions, the Movants also sought to enjoin Mr. Georgilis from filing any further pleadings before this Court, and for monetary sanctions pursuant to 11 U.S.C. § 105 and the Court's inherent authority (the "Sanctions Motions").  [ECF Nos. 19 and 24].[1]  The Sanctions Motions were served on Mr. Georgilis on January 11, 2016 and January 19, 2016, respectively. [ECF Nos. 21 and 25].  After notice and a hearing held on February 8, 2016 at which hearing Mr. Georgilis appeared, the Court dismissed the complaint with prejudice as to all defendants, and a dismissal order was entered on February 11, 2016 ("Dismissal Order") [ECF No. 35].  The Dismissal Order, also enjoined Mr. Georgilis "from commencing any adversary proceeding or

---

[1] On March 24, 2016, Vehifax. Vehifax's counsel and Kraslow, filed a motion seeking to recover attorneys' fees and costs, in the amount of $6,100, from Mr. Georgilis as a sanction pursuant to section 105(a).  This motion was filed two business days prior to the scheduled March 28, 2016 hearing, and there is no record that this motion was ever served on Mr. Georgilis.  Therefore, the Court will not consider the relief requested.

filing any further pleadings seeking affirmative relief in the Debtor's Bankruptcy Case, Case No. 14-75498, or in any adversary proceeding therein without first seeking and obtaining leave of this Court authorizing him to file such pleadings;. . ." [ECF No. 35]. The Court retained jurisdiction to consider the remainder of the Sanctions Motions, which sought the imposition of monetary sanctions against Mr. Georgilis, and adjourned the matter to March 28, 2016. The Dismissal Order, which contained notice of the March 28, 2016 hearing date, was served on Mr. Georgilis on February 12, 2016. [ECF No. 36].

On February 24, 2016, Mr. Georgilis filed a Notice of Appeal of the Dismissal Order along with a unilateral Certification to the Court of Appeals. [ECF Nos. 37, 38]. On March 11, 2016, this Court denied Mr. Georgilis's request for certification of direct appeal to the Second Circuit, and the notice of appeal was transmitted to the District Court for the Eastern District of New York for docketing. [ECF Nos 42, 45]. The appeal was ultimately dismissed for failure to prosecute by order of the District Court, dated January 27, 2017. [ECF No. 56].

The Court now must determine whether to impose monetary sanctions against Mr. Georgilis as requested by the Movants. On March 28, 2016, the Court held a hearing to determine whether such monetary sanctions should be entered. Mr. Georgilis did not appear at the March 28, 2016 hearing, although notice of the hearing was sent to him on February 12, 2016. [ECF No. 35,36]. Both Corning and the Trustee seek these monetary sanctions under 11 U.S.C. §105(a) and the Court's inherent authority to issue sanctions.

Although the "American Rule" is that a litigant is responsible for his or her own attorneys' fees and costs, this rule, has three exceptions: "(1) when a recipient party has litigated for the benefit of a 'common fund;' (2) when a party has willfully disobeyed a court

3

order; or (3) when a party has acted in bad faith." *Grand Street Realty, LLC v. McCord*, No. 04-CV-4738 (CBA), 2005 WL 2436214, at *4 (E.D.N.Y. Sept. 30, 2005) (Amon, J.)). Consistent with the "bad faith" exception to the American Rule, bankruptcy courts retain the inherent authority to sanction abusive litigation practices. *In re Negosh*, No. 06-CV-5617 (JS), 2007 WL 2445158, at *8 (E.D.N.Y. Aug. 22, 2007) (Seybert, J.)). "To impose sanctions pursuant to the Court's inherent power, the Court 'must find that: (1) the challenged claim was without colorable basis; and (2) the claim was brought in bad faith, *i.e.,* motivated by improper purposes such as harassment or delay.'" *Id.* (citing to *Schlaifer Nance & Co., Inc. v. Estate of Warhol,* 194 F.3d 323, 336 (2d Cir. 1999)); *see also Elmasri v. Rupp*, No. 10-CV-2761 (JS), 2011 WL 477726 (E.D.N.Y. Feb. 2, 2011).

In a similar vein, section 105(a) of the Bankruptcy Code provides the bankruptcy court with authority to sanction abusive litigation practices. Section 105(a) provides that: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." "In imposing sanctions pursuant to Section 105(a), courts have required a showing of bad faith similar to that required in imposing sanctions under the court's inherent power or the third exception to the American Rule." *In re Negosh*, 2007 WL 2445158 at *10. However, it is generally accepted that a court may award attorneys' fees and costs under section 105(a), only if such an award will further specific provision(s) of the Bankruptcy Code. *See Grand Street Realty*, 2005 WL 2436214, at *4; *see also New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. et al (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 91-92 (2d Cir. 2003). It has been held that where a trustee is fulfilling the duties imposed on him or her by section 704 of the Bankruptcy Code, it is appropriate to use section 105(a) to recover those fees and costs as a sanction as long as bad faith is also found. *See Grand Street*

*Realty*, 2005 WL 2436214, at *5 ("The sanction imposed amounted to restitution of the legal expenses incurred by the Trustee in attempting to secure the Landlord's cooperation. The sanction thus furthered the purposes of § 704, by providing restitutionary damages for a party's failure to cooperate in good faith with a bankruptcy trustee's efforts to carry out the duties imposed by that section. The bankruptcy court's action therefore appears to be well within the authority conferred by section 105(a).").

To understand why the Movants seek to impose monetary sanctions against Mr. Georgilis, a little background is necessary: Mr. Georgilis is the principal of a corporation, American Made Tires, Inc. ("AMT"). One of the defendant herein, Corning, is a secured creditor of AMT with a personal guarantee by Mr. Georgilis. Mr. Georgilis caused AMT to be filed in two successive bankruptcy cases. The first bankruptcy case was filed on December 13, 2011 (Case No. 11-50397-ess) ("First AMT Bankruptcy"). During the course of the First AMT Bankruptcy, AMT was permitted to use Corning's cash collateral, by Order, dated July 19, 2012, and in connection with that, AMT, "acknowledge[d] and agree[d] that . . . it is indebted to Corning without defense, counterclaim or offset of any kind . . .", and that "the Corning Loan Documents, . . constitute valid and enforceable agreements and obligations of the Debtor, and [] the Pre-Petition Liens granted by the Debtor for the benefit of Corning are valid, binding, perfected, enforceable, non-avoidable and not subject to subordination,. . . ." and that "the Debtor does not possess and will not assert any claim, counterclaim, setoff or defense of any kind or nature that would in any way affect the validity, enforceability, or priority of any pre-petition debt owed to Corning or Corning's security interest in, or liens upon, any pre-petition collateral." (First AMT Bankruptcy, ECF No. 65). A second interim order authorizing AMT's

continued use of Corning's cash collateral was entered on February 14, 2013. The second interim order, signed by Mr. Georgilis and his then-wife Shenaz Georgilis, contained similar acknowledgements with respect to Corning's loan as the first interim order, and further provided that Steven Georgilis and Shenaz Georgilis, respectively, "shall execute a deed in lieu of foreclosure transferring personally owned realty upon which Corning maintains mortgages of $340,000 located at 588 Helena Drive, Hempstead, New York ["Helena Drive Property"] to [Corning]. [Corning] agrees to forbear from recording the referenced deed provided the Debtor strictly complies with the terms of this Order [including adequate protection payments to Corning]." (First AMT Bankruptcy, ECF No. 112). AMT, owned and controlled by Mr. Georgilis, was represented by legal counsel in connection with these cash collateral orders, and neither the first nor the second interim order were appealed. On April 10, 2013, Corning filed an affirmation of non-compliance with the terms of the second interim order, and the automatic stay was lifted to permit Corning to pursue its rights under the terms of the interim orders, including its rights with respect to the Helena Drive Property. (First AMT Bankruptcy, ECF Nos. 119, 121).

Pursuant to an Order of Seizure, dated June 7, 2013, the state court found Corning to have a "first priority security interest, superior to all other ownership or security interests, in all equipment, inventory, and other assets of defendant, American Made Tires, Inc.. . . " [Exhibit L to Corning Motion to Dismiss, ECF No. 22].

The First AMT Bankruptcy was dismissed by Order, dated June 11, 2013, and was closed.

On December 18, 2013, Mr. Georgilis caused a second chapter 11 petition to be filed on behalf of AMT (Case No. 13-47510-ess). That case was dismissed by Order, dated August 1, 2014, and was closed.

On October 23, 2014, Mr. Georgilis commenced an action in state court against Corning and Central Marketing, Inc. (N.Y. Supreme Court, Queens County, No. 15593/2014) ("First State Court Action").[2] In the First State Court Action, Mr. Georgilis sought to enjoin Corning from exercising its rights to the AMT collateral and the Helena Drive Property, and sought to have the AMT debt to Corning declared void as a matter of law. Mr. Georgilis asserted claims for fraud, conversion, breach of covenant of good faith and fair dealing, among others. By Order, dated January 12, 2015, the state court issued an order denying Mr. Georgilis's motion for preliminary injunction on the basis that he failed to demonstrate a likelihood of success on the merits.

On November 21, 2014, Mr. Georgilis filed another state court action, this one against Corning, two individual employees of Corning, Corning's counsel and Rasmussen, individually, claiming violations of the loan documents and challenging Corning's liens and right to repayment of the loan. (N.Y. Supreme Court, Queens County, Civil Action No. 16965/14) ("Second State Court Action"). In the Second State Court Action, Mr. Georgilis again sought to enjoin Corning from enforcing its deed in lieu of foreclosure with respect to the Helena Drive Property. (ECF No. 22, Exhibit O). On December 9, 2014, Mr. Georgilis filed, in the (then-closed) First AMT Bankruptcy, a notice of removal of the Second State Court Action (Bankr. E.D.N.Y., Adv. Proc. No. 14-1225). Despite the notice of removal, the state court denied Mr.

---

[2] Although Mr. Georgilis filed a summons and notice, it appears that he did not file an actual complaint until in or about March 2015.

Georgilis's motion for preliminary injunction by Order, dated March 16, 2015. [ECF No. 22, Exhibit N]. In so doing, Justice McDonald noted that Mr. Georgilis sought identical relief in the First State Court Action, which relief was denied by Order of Justice Greco, dated January 12, 2015. [ECF No. 22, Exhibit O]. In the First AMT Bankruptcy Case, the Second State Court Action was dismissed by Judge Stong, upon motion of the Corning defendants, by Order, dated August 24, 2105.[3]

On December 12, 2014, in the midst of Mr. Georgilis's vigorous but unsuccessful attempts to challenge Corning's debt and lien rights with respect to the Helena Drive Property and the AMT collateral, Shenaz Khan a/k/a Shenaz Georgilis, filed a chapter 7 petition before this Court. At the time of her bankruptcy filing, Ms. Khan and Mr. Georgilis were estranged and Ms. Khan was the sole owner of the Helena Drive Property (which appears to have been a rental property – not Ms. Khan's primary residence). Allan B. Mendelsohn ("Trustee") is the appointed chapter 7 trustee, and he retained Rosen Kantrow and Dillon, PLLC, to represent him in connection with this bankruptcy case. On May 18, 2015, the Trustee moved before this Court to sell the Helena Drive Property. Ms. Khan did not oppose the sale. Shortly thereafter, Mr. Georgilis, sought (unsuccessfully) to have Ms. Khan's bankruptcy case transferred to Judge Stong who presided over the AMT bankruptcies.

On May 26, 2015, Mr. Georgilis filed a notice of removal of the First State Court Action bringing that action before Judge Stong in the First AMT Bankruptcy. (Bankr. E.D.N.Y. Adv. Proc. No. 15-1062).

---

[3] Corning's motion to dismiss was granted with leave to re-plead. Upon Mr. Georgilis's failure to re-plead, the action was dismissed.

On December 22, 2015, despite the pendency of the First State Court Action before Judge Stong, Mr. Georgilis, filed the instant adversary proceeding seeking nearly identical relief. Mr. Georgilis immediately filed a motion seeking a determination that Corning's liens are unenforceable, and to direct Corning to relinquish the deed in lieu of foreclosure with respect to the Helena Drive Property.[4]

Ultimately this Court approved a stipulation between the Trustee and Corning to auction the Helena Drive Property in bankruptcy and maintain a carve-out from Corning's collateral of $20,000 to be paid to the estate. This $20,000 "carve-out" is the sole asset of this bankruptcy estate. Mr. Georgilis objected to the sale of the property on the basis that he has objections to Corning's claim and lien against the property. Mr. Georgilis filed objections to the proof of claim filed by Corning in Ms. Khan's bankruptcy case, advancing arguments nearly identical to those advanced in the First and Second State Court Actions, and in the instant adversary proceeding. [Case No. 14-75498, ECF No. 102].

By Order, dated April 6, 2016, the Court approved the sale of the Helena Drive Property over Mr. Georgilis's objection.

The Court finds that Mr. Georgilis's behavior in this case has exceeded the permissible bounds of zealous advocacy, and that monetary sanctions are warranted. First, in order to obtain the use of Corning's cash collateral, Mr. Georgilis, on behalf of AMT which was represented by legal counsel at the time, freely acknowledged the validity and priority of the Corning debt and liens in connection with AMT's use of cash collateral in the First AMT

---

[4] Mr. Georgilis also filed a motion to find Defendant, Vehifax in contempt of court and impose monetary sanctions. [ECF No. 6].

9

Bankruptcy. That alone should have precluded Mr. Georgilis's subsequent challenges to the Corning loan and security interests.[5] Second, prior to filing the instant adversary proceeding, Mr. Georgilis sought and was denied injunctive relief identical to the relief requested in the instant adversary proceeding. Third, at the time the instant adversary proceeding was filed, nearly identical relief was being pursued by Mr. Georgilis before Judge Stong in the First AMT Bankruptcy Case. At that time, Judge Stong had pending before her a motion by Mr. Georgilis to reconsider her remand of the First State Court Action. Fourth, Mr. Georgilis showed no regard, despite repeated reminders by this Court, for his lack of standing to pursue these claims against Corning in this bankruptcy case, where he is not a creditor and has no ownership interest in the Helena Drive Property.

Finally, it is clear from emails submitted by Corning and the Trustee in connection with the Sanctions Motions that Mr. Georgilis's intention here was to harass the Defendants if they did not accede to his demands. [*See* ECF No. 19, Exh. A, and ECF No. 24, Exh. I]. For example, on February 12, 2015, Mr. Georgilis wrote to Corning's counsel,

> I will pursue all my rights and remedies. And I will persevere at the end. I have submitted to you the method and manner by which all this could go away. . . . It's going to get very interesting. One thing I can tell you for sure, Corning and Davison Fink will be in the front and center of all the legal reviews and possibly in all the banking periodicals. I am several steps away from certifying this lawsuit as a class-action and then I believe Corning may have to put a lot of money reserve to cover this action. A look at the bright side Mr. Rasmussen, Corning and possibly you may go down in legal history just like Mr. Gideon and Mr. Wainwright. (ECF No. 24, Exh. I, Email dated Feb. 12, 2015).

---

[5] As noted by Judge Stong, despite Mr. Georgilis's repeated arguments and litigation efforts in favor of nullifying the cash collateral stipulations, "[t]he record does not show, or even suggest, that [Corning] perpetrated a fraud in preparing or submitting these stipulations, or that any proposed orders were prepared in an inappropriate way." (Adv. Proc. No. 15-1062, ECF No. 49, at 20).

Then, just prior to filing the instant adversary proceeding, Mr. Georgilis emailed Corning's counsel a list of demands, in return for which Mr. Georgilis would "drop the proceeding" against Corning, and agree not to "re-initiate" proceedings against Corning and the individual defendants. (ECF No. 24, Exh. I, Email dated Dec. 9, 2015). Emails similar in tone were sent by Mr. Georgilis to the Trustee's counsel. (ECF No. 19, Exh. A).

During these proceedings the Court advised Mr. Georgilis on a number of occasions that while he certainly has the right to represent himself that right comes with the responsibility to conduct himself in a manner consistent with what is deemed appropriate to a judicial proceeding before this Court. Pro se litigants face a daunting task to not only understand the relevant substantive law, but the procedural complexity of federal court litigation. This Court is well aware of these challenges and attempts to balance this with the right of all parties to the litigation. The failure to retain a lawyer should not prevent anyone from having their day in Court. However, a party cannot use his pro se status to shield himself from the consequences of behavior that is deemed unacceptable and cause damage to his adversary. This Court has seen in recent years a dramatic increase in litigants seeking sanctions against their adversary. The reasons for this are complex. However, where once there was a basic agreement on how people conducted themselves before a court, it appears that many of those norms of behavior are being ignored. This is true for both attorneys and pro se parties. It is critical that the courts be vigilant in protecting the right of parties to have their day in court. However, the courts also have an obligation, when appropriate, to utilize all means, including sanctions, to maintain the integrity of the proceedings.

For all these reasons, the Court finds that Mr. Georgilis's actions in connection with this adversary proceeding and this bankruptcy case were without colorable basis, brought in bad faith and motivated by improper purposes such as harassment. As such monetary sanctions against Mr. Georgilis are warranted in favor of the Trustee under sections 105(a) and 704 of the Bankruptcy Code, and the Court's inherent power. Monetary sanctions against Mr. Georgilis are warranted in favor of Corning under the Court's inherent power to sanction abusive litigation practices.

In support of sanctions, the Trustee's counsel filed an affidavit with attached time records outlining the hours billed to the estate by the Trustee's counsel "solely as they relate to the frivolous pleadings filed by the Plaintiff in both this adversary proceeding as well as the Debtor's chapter 7 case." [ECF No. 52]. In total, the Trustee's counsel seeks monetary sanctions in the amount of **$30,307.50** which results from a total of 62.30 hours billed by the Trustee's counsel in responding to pleadings filed by Mr. Georgilis, plus $196.42 in expenses. The Trustee's affidavit in support of same served on Mr. Georgilis on April 20, 2016. [ECF Nos. 52, 53]. The Court finds the counsel fees requested by the Trustee to be reasonable in light of Mr. Georgilis's overly zealous litigation practices before this Court which caused the Trustee to incur these additional legal fees. The total funds in this estate are the $20,000 carve out from the sale of the Helena Drive Property, and the limited distribution that will come to creditors of this estate should not be diminished as a result of Mr. Georgilis's conduct here.

Counsel for Corning also filed an affidavit in support of monetary sanctions against Mr. Georgilis [ECF No. 49]. Corning seeks a total of **$60,944.63** ($51,688 in fees and $9,276.63 in disbursements) as monetary sanctions which are the fees and expenses incurred by Corning as

a result of Mr. Georgilis's "frivolous action in the Shenaz Kahn bankruptcy. . .." [6] [ECF No. 49]. The affidavit in support of monetary sanctions was served on Mr. Georgilis on March 21, 2016 [ECF No. 49].[7] The Court finds the fees and expenses to be reasonable considering the protracted nature of these proceedings, and grants the fees and expenses as requested.

For all of these reasons, judgment will enter in favor of the Movants against Mr. Georgilis in the amounts requested. Movants shall submit proposed judgments for signature forthwith.[8]

So ordered.

Dated: Central Islip, New York
October 24, 2017                    /s/ Robert E. Grossman_____
                                    Hon. Robert E. Grossman, U.S.B.J.

---

[6]     Corning also seeks a total of $86,424.60 for defending the "frivolous Queens County actions[.]" [ECF No. 49, ¶10]. This Court will not consider monetary sanctions arising out of those non-bankruptcy proceedings.

[7]     The Court notes that the Corning affidavit in support of monetary sanctions, signed by Corning's counsel, is not supported by billing records. However, the Court will accept the affidavit of counsel, as an officer of the Court, as to actual amounts billed as evidence of those billings. Mr. Georgilis was served with that affidavit and presented no argument that Corning's billed fees and actual expenses were unreasonable.

[8]     The Court is mindful of prior decisional authority finding that the plaintiff's ability to pay monetary sanctions should be considered when determining monetary sanctions award. *See Moxey v. Pryor*, No. 15-CV-4632 (JS), 2017 WL 1229735, at *5 (E.D.N.Y. Mar. 31, 2017) (citing *Sassower v. Field*, 973 F.2d 75, 81 (2d Cir. 1992)). However, Mr. Georgilis was given notice and an opportunity to be heard and failed to appear at the March 28 hearing.